IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARK WEST,                                   )
                                             )
          Plaintiff,                         )
                                             )
     v.                                      )   Case No. 10-CV-2377-JAR
                                             )
GENERAL SPORTS VENUE, L.L.C.,                )
et al.,                                      )
                                             )
          Defendants.                        )
                                             )

## MEMORANDUM AND ORDER

Plaintiff Mark West moves the Court for an award of prejudgment interest as additional damages resulting from the failure of Defendant General Sports Venue, LLC ("GSV") to pay him sales commissions owed on the contract for the Lawrence public school district's multi-field project (the "Lawrence Contract"). The matter has been fully briefed and the Court is prepared to rule. As set out more fully below, the Court grants Plaintiff's request for prejudgment interest in the amount of $25,205.74.

### I.  BACKGROUND

Plaintiff worked as an independent sales representative for GSV, which is now named AstroTurf, LLC. AstroTurf, LLC is in the business of marketing and selling commercial sports turf for uses such as football and baseball fields. From 2004 until May 31, 2008, Plaintiff was paid on the basis of sales commissions plus reimbursement for expenses.

Plaintiff's sales commission was based on a sliding scale with commission percentage

rising with the gross profit margin on each project.[1]  For instance, if GSV's gross profit margin on the turf portion of the project was over 20%, then Plaintiff's commission rate was set at 18% of the gross profit for turf.[2]  If GSV's gross profit margin on the turf portion of the particular project was 25%, then Plaintiff's commission rate increased to 20% of the gross profit for turf.[3]  For the site work portion of the project, Plaintiff received 40% of the gross profit on the non-turf portion ("site") of each project.[4]

Effective June 1, 2008, Plaintiff's business relationship changed from an independent sales representative to an employee.  His compensation structure also changed on this date.  Prior to the change in compensation, Plaintiff discussed with Defendants sales commissions that would be paid to Plaintiff on a multi-field project for the Lawrence, Kansas, public school district that Plaintiff had been working on.  Plaintiff claimed that the parties agreed that he would be paid sales commissions on the entire Lawrence public school project, and Defendants claimed that the parties agreed that Plaintiff would be paid sales commissions on only part of the project, with the rest of the project being factored into Plaintiff's new compensation structure.  GSV terminated Plaintiff on November 30, 2009.

The parties disputed whether their agreement was for Plaintiff to receive a commission on the entire Lawrence Contract or only a portion of the Lawrence Contract.  At the time GSV terminated Plaintiff on November 30, 2009, it had paid Plaintiff commissions totaling

---

[1] Trial Exhibit 21-A.

[2] *Id.* at 12.

[3] *Id.*

[4] *Id.* at 3.

$143,516.18, which sum was based on the school district's payment of five pay applications for the Lawrence Contract in the amount of $4,631,300.11.[5]

Plaintiff filed this action seeking to recover the additional commission payments that he claimed entitlement to, in addition to statutory penalties for Defendants' alleged failure to make these payments in a timely manner. Plaintiff also sought damages for a golf trip and a pair of Lucchese brand cowboy boots the Defendants promised, but never provided to him.

The matter was tried to a jury. The jury was instructed that if they found Plaintiff had sustained damages for unpaid sales commissions, then they needed to decide whether Plaintiff was entitled to collect additional statutory damages. They were instructed:

> Plaintiff is entitled to additional statutory damages if Defendants knowingly failed to pay Plaintiff any commissions earned through November 30, 2009, within 30 days after that date. "Commissions earned through November 30, 2009" or "earned commissions" means commissions with respect to services or merchandise which actually had been delivered or furnished to, accepted by and paid for by the Lawrence, Kansas public school district by November 30, 2009.
>     You may find that Defendants acted "knowingly" if you find that Defendants were aware or understood that Plaintiff had earned commissions for which he was entitled to be paid as of November 30, 2009, but Defendants deliberately or intentionally did not pay those commissions within 30 days after November 30, 2009.[6]

Plaintiff asserts that his commission payment spreadsheets that he received from GSV incorrectly reported GSV's gross profit margin for turf at 20% and for site work at 5.57%, while GSV's estimated gross profit on turf actually worked out to 25.11% for the Lawrence Contract. There was conflicting testimony regarding gross profit on the site work portion of the Lawrence

---

[5]Trial Exhibit 169 at A00035.

[6]Doc. 67, at 11 (Instruction No. 10).

3

Contract. Mr. Shonk, GSV's former Director of Operations for the Central Region, testified that his calculations show that GSV's estimated gross profit for site work was 11.40% for thirteen projects under the Lawrence Contract (totaling $3,471,031) for site work. In response to Shonk's testimony, Mr. Strom, on behalf of GSV, presented his own worksheet entitled "Company's View–Parts 1 and 2 only," showing the turf profit percentage as 25.30% and the site profit percentage as 3.32% for the first two "parts" of the Lawrence Contract.[7] All of the turf work was completed in the first two "parts" of the Lawrence Contract.

Plaintiff submitted two different damage theories to the jury. First, by way of Plaintiff's Exhibit 241, Plaintiff argued that his commissions on the turf aspect of the project could be calculated by assuming a 20% profit margin and an 18% commission rate. Plaintiff argued that commissions on the site work aspect of the project could be calculated by assuming a 5.57% profit margin and 40% commission rate. Using those assumptions, Plaintiff claimed $104,283.83 in unpaid commissions.[8]

Plaintiff argued for a different formula pursuant to Plaintiff's Exhibit 243. Plaintiff argued that his commissions on the turf aspect of the project could be calculated by assuming a 25.11% profit margin and a 20% commission rate. Plaintiff argued that commissions on the site work aspect of the project would be calculated by assuming an 11.41% profit margin and 40% commission rate. Using those assumptions, Plaintiff claimed $271,775.88 in unpaid commissions.[9]

---

[7] Trial Ex. 429.

[8] Trial Ex. 241.

[9] Trial Ex. 243.

Defendants maintained that no commissions were owed. However, Defendants also presented evidence by way of Defendants' Exhibit 428 that, assuming Defendants had agreed to pay commissions on the entire project, the remaining unpaid commissions would have been $89,395.70.[10]

Defendants also maintained that Plaintiff's calculations were erroneous in two key respects. First, Plaintiff used an erroneous number for the total contract value ($8,705,493), rather than the value as reflected in Plaintiff's Exhibit 218 ($8,412,381). Second, Plaintiff argued for a grossly inflated site work profit percentage (5.57% or 11.41%), rather than the profit percentage derived from Exhibit 218 (3.8%), as shown in Exhibit 428.

Defendants further disputed Plaintiff's commission calculations in three respects related to Plaintiff's Exhibit 218. First, Plaintiff insisted that "profit" for commission purposes should include all of the costs listed in the "general conditions" column on Exhibit 218. Defendants offered testimony from Doug Strom that this construction was erroneous, and further reinforced that point by reference to Plaintiff's Exhibit 181, asserting that "general conditions" were part of costs, not part of profit.

Second, Plaintiff asked the jury to assume that the last four line items on Exhibit 218 (fencing and goals at two schools, soil conditions, and bonds) generated profit. Strom testified that this was an improper assumption given that these items were plainly not expected to generate profit as evidenced by the absence of any profit number assigned to these line items on Exhibit 218.

Third, Defendants contended that the amount Plaintiff sought in commissions for site

---

[10]Trial Ex. 428.

5

work in Exhibit 243 ($218,212.87) was patently unreasonable because it far exceeded the entire projected profit for site work listed in Exhibit 218 ($170,469.00).

On January 12, 2012, the jury returned a verdict for Plaintiff on his breach of contract claim for unpaid sales commissions, and found the amount of unpaid sales commissions to be $235,247.69.  The jury further found that Defendants "knowingly" failed to pay Plaintiff $124,000 in sales commissions that were earned but unpaid as of November 30, 2009, within thirty days after that date.  The jury also awarded Plaintiff $3,709.14 in damages for the golf trip and $1097.35 in damages for the Lucchese brand cowboy boots.  Plaintiff now seeks prejudgment interest on the unpaid sales commissions that the jury awarded him.

## II.     STANDARD FOR AWARDING PREJUDGMENT INTEREST

"The standard of review for allowing prejudgment interest is a matter of judicial discretion subject to reversal only upon a showing of abuse of discretion."[11]  Prejudgment interest is a matter of state law in a diversity case.[12]  Under Kansas law, prejudgment interest is governed by K.S.A.§ 16-201, which provides that "[c]reditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due . . . ."[13]

"In Kansas, the general rule is that prejudgment interest is allowable on liquidated claims."[14]  "A claim becomes liquidated when both the amount due and the date on which it is

---

[11] *Ives v. McGannon*, 149 P.3d 880, 889 (Kan. Ct. App. 2007) (citation omitted).

[12] *Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1147 (D. Kan. 2010).

[13] K.S.A. § 16-201.

[14] *Owen Lumber Co. v. Chartrand*, 157 P.3d 1109, 1118 (Kan. 2007).

6

due are fixed and certain, or when the same become definitely ascertainable by mathematical computation."[15]  A claim is not considered unliquidated merely because there is a good-faith controversy about whether any amount is due at all.  Thus, where there is no dispute about the amount of damages, and the only question left for the jury is whether or not the defendant is liable, the claim may be liquidated.[16]

However, where the amount of damages is disputed throughout the trial and requires determination by a jury, damages are not liquidated.[17]  The court in *Ives v. McGannon*, noted the distinction when the parties come to court with divergent numbers regarding damages.[18]  Thus, the court found that because the amount due to plaintiff did not become fixed until judgment was entered by the jury, plaintiff was not entitled to prejudgment interest as of right, and the only remaining question was whether plaintiff was entitled to a discretionary award.[19]  Courts have even held that it is well within the district court's discretion to deny prejudgment interest in a case in which the jury awarded the exact amount plaintiff claimed at trial, where the plaintiff had been seeking a different amount prior to trial.[20]

In *Lisbon v. Heatcraft, Inc.*, the court held that the damages "were not liquidated until the jury reached its verdict," where the jury had been told that a proper measure of damages could be

---

[15]*In re Midland Indus., Inc.*, 703 P.2d 840, 842 (Kan. 1985).

[16]*Ives*, 149 P.3d at 890 (citing *Hamilton v. State Farm Fire & Cas. Co.*, 953 P.2d 1027 (1998) (only question left for jury was whether or not coverage existed under the insurance policy)).

[17]*Green Constr. Co. v. Kan. Power & Light Co.*, 1 F.3d 1005, 1010 (10th Cir. 1993) ("This is not a case where the parties stipulated to the damages or even generally agreed on the damages.")

[18]*Ives*, 149 P.3d at 890.

[19]*Id.*

[20]*GFSI Can. Co. v. Fletcher Leisure Grp., Inc.*, 277 P.3d 447, *13 (Kan. Ct. App. 2012) (citing *Lisbon v. Heatcraft, Inc.*, 930 P.2d 1096, 1099 (Kan. Ct. App. 1997)).

7

the amount of commissions paid to the new sales representative minus any costs that the plaintiff would have incurred in securing the same sales.[21]  The jury decided not to deduct any costs of sale and awarded the plaintiff the full amount of commissions that had been paid to the new sales representatives.[22]  That could not have been determined before trial, and the court decided not to award prejudgment interest.[23]

In the instant case, after hearing the conflicting views of the parties, the jury rejected all three of the calculations offered by the parties, and determined that the total amount of unpaid commissions was $235,247.69.  The jury was not asked to identify how it reached this number, so the parties and Court have no way of determining where the jury found fault with the parties' calculations.  Regardless, because the parties disputed the total amount of unpaid commissions, and the jury refused to side with either party, the total amount of unpaid commissions clearly was not liquidated until the jury rendered its verdict.  Therefore, prejudgment interest cannot be awarded on this amount pursuant to K.S.A. § 16-201.[24]

The jury did find that Defendants "knowingly" failed to pay Plaintiff $124,000 in sales commissions that were earned but unpaid as of November 30, 2009, within thirty days of that date.  Based on the jury's award and in light of Instruction No. 10, this amount was arguably

---

[21]*Lisbon*, 930 P.2d at 1099; *See also Delta Groups Eng., Inc. v. Sprint Spectrum, LLC*, 229 P.3d 420 (Kan. Ct. App. 2010) ("By the very nature of the claim, Delta's damages were not liquidated until the district court determined the fair value of the damages based upon the evidence at trial.").

[22]*Lisbon*, 930 P.2d at 1098.

[23]*See id.* at 1099.

[24]*See Green Constr.*, 1 F.3d at 1010 (holding that trial court properly refused to award prejudgment interest where plaintiff prayed for $422,010.56, but jury awarded $222,312.56); *see also Hatch & Kirk Power Servs. Corp. v. City of Girard*, 1999 WL 99307 (D. Kan. 1999) (where plaintiff claimed contract damages of $382,162, defendant "hotly contested" that amount, and jury awarded $227,020, refusing to award prejudgment interest because damages were not liquidated prior to jury's verdict).

liquidated on December 30, 2009. Even if this amount was unliquidated, the Court finds that this case warrants the Court entering an award of prejudgment interest on this amount pursuant to the recognized equitable exception.

The Kansas Supreme Court has created an exception to the general rule and held that when equitable principles so require, a court in its discretion may award prejudgment interest where necessary to arrive at fair and full compensation.[25] In exercising discretion, the Court is guided by considerations of fairness and traditional equitable principles.[26] In this case, the jury found that Defendants knowingly failed to pay Plaintiff the $124,000 in sales commissions that were earned as of November 30, 2009. Even though the Court finds that the total amount of unpaid commissions was unliquidated until the jury returned its verdict, the Court is aware that the shift in Plaintiff's calculations was caused by Plaintiff's delayed receipt of pertinent documents that were in the possession of GSV's former Director of Operations for the Central Region.

The Court finds that an award of prejudgment interest on the $124,000 amount is fair and equitable even though a statutory penalty was imposed on this same amount.[27] The Kansas Legislature clearly allows for a plaintiff to recover both prejudgment interest and a statutory penalty, as K.S.A. § 44-342(c) specifically allows for an award of prejudgment interest on

---

[25]*Dodson Aviation, Inc. v. HLMP Aviation Corp.*, No. 08-4102-KGS, 2011 WL 1234705, at *6 (D. Kan. Mar. 31, 2011) (citing *Lightcap v. Mobil Oil Corp.*, 562 P.2d 1, 16 (Kan. 1977), *cert. denied*, 434 U.S. 876 (1977)); *see also Schatz Distributing Co. v. Olivetti Corp. of America*, 647 P.2d 820, 826 (Kan. Ct. App. 1982) ("a court may in the exercise of its discretion award interest or its equivalent as an element of damages even where the primary damages are unliquidated.").

[26]*Dodson*, 2011 WL 1234705, at *6 (citing *Wichita Fed. Sav. & Loan Ass'n v. Black*, 781 P.2d 707, 721 (Kan. 1989), *superseded by statute on other grounds*.).

[27]*See Beckman v. Kan. Dept. Of Human Res.*, 43 P.3d 891, 898 (Kan. Ct. App. 2002) (finding no error in awarding both interest and penalties).

"earned" commissions not paid within thirty days of the individual's termination with the company:

> If a principal fails to pay a commission salesperson any earned commission as required by subsection (a), such principal may be assessed interest as provided under K.S.A. 16-201 and amendments thereto on such commissions from the date such commissions are required to be paid pursuant to subsection (a).[28]

The Court finds that the $124,000 amount was liquidated on December 30, 2009, and even if it was unliquidated, Plaintiff is entitled to prejudgment interest on this amount pursuant to the equitable exception to the requirement that the claim be liquidated. The Court finds that Plaintiff is entitled to prejudgment interest on $124,000 from December 30, 2009 through January 11, 2012, in the amount of $25,205.74.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's request for prejudgment interest is **GRANTED** in the amount of $25,205.74.

**IT IS SO ORDERED.**

Dated: <u>August 29, 2012</u>

                                       S/ Julie A. Robinson

                                       JULIE A. ROBINSON

                                       UNITED STATES DISTRICT JUDGE

---

[28] K.S.A. § 44-342(c).